**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 04-128 (RMC)** |
| **v.** | : | |
| | : | |
| **JOHN FRANKLIN, et al.** | : | |
| **(John Franklin,** | : | |
| **William Simmons,** | : | |
| **Anthony Davis)** | : | |

_____

### GOVERNMENT'S OPPOSITION TO DEFENDANTS'
### MOTION TO SUPPRESS EVIDENCE (seized pursuant to the search warrant)

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendants Franklin's, Simmons' and Davis' motions to suppress evidence seized pursuant to a search warrant.  Franklin and Simmons are  defendants among Group I, and scheduled to commence jury trial on March 6, 2006.  Defendant Davis is assigned to Group II, and scheduled for trial in September, 2006.   As grounds for this opposition, the United States relies on the following points and authorities and  such other points and authorities as may be cited at a motions hearing.

### I.  Facts

On March 15, 2004, Magistrate Judge John M. Facciola approved an omnibus 78 page search warrant and affidavit that authorized the search of seventeen premises in Washington, D.C. and numerous other premises in Maryland and Virginia.  In the early morning hours of March 16, 2004, members of the Federal Bureau of Investigations and Metropolitan Police Department officers executed warrants at those seventeen premises in Washington, D.C.  At issue in this motion are the search warrants executed at locations attributed to John Franklin (his home at 1314 Belmont St.,

N.W. and his grandmother's home at 1200 G St., N.E.), William Simmons (his home at 1226 G St., N.E.) and Anthony Davis (his home at 1825 M St., N.E. #4).

### 1314 Belmont St., N.W.

On March 16, 2004, at 6:02 am, law enforcement officers executed a search warrant at 1314 Belmont St., N.W.  A Special Agent with the FBI knocked and announced their  presence and purpose at the rear door of the residence. After waiting a reasonable amount of time without any response from the interior of the residence, forced entry was made into the home.  As agents cleared the residence, they encountered an adult  male and an adult female exiting from what appeared to be their bedroom on the second floor. Those two individuals were identified as John Franklin and his common law wife, Elizabeth Lee. Agents secured Franklin and Lee and located five adolescent children inside the home. Agents began searching the premises and located numerous items that were ultimately seized.  From the defendants' bedroom, police found a loaded .45 caliber Sturm and Ruger semi-automatic pistol under the mattress, a bag of  suspected ecstasy under the night stand, $20,300 U.S. currency inside a Prada bag, an empty Everfresh juice bottle and an empty Ocean spray juice bottle, both with PCP residue inside, expensive jewelry, financial documents and other documents bearing  Franklin and Lee's names.  From the closet adjacent  to the bedroom, agents found a loaded SKS assault rifle, a loaded H&K .223 caliber rifle, a loaded sawed-off KBI AK-47 rifle, a loaded Hawk shotgun and a bullet proof vest.   Agents also seized a variety of .45 caliber,  9mm, .380 caliber and shotgun ammunition, photos and phone list, a safe deposit contract, $2290 in U.S. currency, various paperwork including financial documents, social security cards, birth certificates, a notebook, and mail matter, 2 fur coats, a cell phone, a camera, a parking citation and part of the Washington Post Metro section from February 17, 2004.  Both Franklin and Lee were arrested

pursuant to warrants obtained the previous day.  During the execution, Franklin's mother and sister arrived to take custody of the children.

### 1200 G St., N.E.

At the same time, agents searched 1200 G St., N.E., – Franklin's grandmother 's home and the rendevous spot for John Franklin and his PCP supplier, Herbert Martin.  No contraband was located and the only item seized was a Sprint phone bill in the name of Franklin's relative.

### 1226 G St., N.E.

Also, at the same time, agents searched the home of Williams Simmons, located several doors down a typical city block of row houses at 1226 G St., N.E.  At 6:05 am, entry was made when a resident opened the door, in response to an agent who knocked and announced their presence and purpose.  Simmons was not located inside the home, but three adult males were present.  Seized by the agents were the following items - a bag containing 8 smaller zip locks of cocaine base (crack cocaine), paperwork including miscellaneous records and a hand written note, one cell phone and 3 cartridge cases from the back porch.

### 1825 M St., N.E. #4

Also, at the same time, agents  searched the home of Anthony Davis at 1825 M St., N.E. #4. At this location, agents were granted entry into the premise after knocking and announcing their presence and purpose. Anthony Davis was located at this address along with two women, aged 69 and 58.  Seized from this location were the following items - from a locked metal box after  Davis handed over the key, a bag of 56 ecstasy pills, and $2600 in U.S. currency, and a Taurus .45 caliber pistol with 9 rounds of ammunition, 2 crack pipes, empty zip lock bags and vials, empty zip lock bags with white residue, razor blades with cocaine residue, a small quantity of marijuana and heroin,

3

an additional $170 in U.S. currency and small pieces of paperwork and mail matter in Davis' name.

Davis was arrested pursuant to a warrant obtained the previous day.

Attached as exhibits to this opposition are copies of the applicable search warrants, search

warrant returns and the affidavit used in support of all the search warrants.

## II. Issues

The defendant, John Franklin, makes the following challenges to the admission of evidence

seized at his home: 1) Agents violated the "knock and announce" rule by failing to wait a reasonable

amount of time before forcing entry, 2) the search warrant relied on "stale" information in so far as

the affidavit was based on the investigation of Franklin that began in 2002, included undercover

purchases from Franklin from January, 2003 through October 28, 2003, surveillance and wiretap

intercepts from his cell phone for a two-month period from August through early October, 2003,

because the search warrant took place "some 5 months after the last mentioned act," 3) the warrant

was overly broad in that it sought items such as "address and/or telephone books ... photographs ...

indicia of travel" and did not particularize the items to be seized and 4) that agents seized items not

listed in the warrant such as the fur coats, an envelope and business card, gambling cards, letters,

receipts, cameras, birth certificates, social security cards, the Post's Metro section, the parking

citation and the notebook and that this flagrant disregard for the limitations of the warrant mandates

that all evidence be suppressed.   Franklin also argues that the good faith exception to the

exclusionary rule,  United States v. Leon, 468 U.S. 897 (1984), should  not apply to otherwise deny

the suppression motion because  the search warrant affidavit  was so lacking in the indicia of

probable cause as to render official belief in its existence, entirely unreasonable.

William Simmons has filed a motion asking to join with Davis' motion and asserts that the evidence in the search warrant affidavit was stale and that there was no nexus between his criminal activity on the street and the premises searched (his home).

Anthony Davis makes the following challenges to the items seized at his home: 1) the warrant was fatally defective because, while it may have demonstrated that Davis was involved in the conspiracy and engaged in drug trafficking and that Davis lived at this address, it failed to provide adequate probable cause to show that contraband would be found inside his home insofar as he was never seen going to his home to retrieve narcotics as part of the sales nor was evidence proffered that he used his home for drug activity, and 2) the information in the warrant was stale because the last event attributed to Davis was his sale of narcotics to an undercover officer on June 24, 2003, almost nine months before the issuance of the warrant. Davis also avers that the good faith exception to the exclusionary rule enunciated in <u>Leon</u> does not apply in this case.

### III. Argument

**A.  <u>The evidence should not be suppressed because the exclusionary rule is inapplicable to evidence seized pursuant to a lawfully executed search warrant</u>**.

Defense counsel challenge the sufficiency of a probable cause determination previously rendered by a reviewing federal magistrate. They argue for suppression of evidence obtained pursuant to the lawful execution of that search warrant. The motion is utterly devoid of merit and should be rejected summarily. The suppression issue can be resolved without necessity for any testimony beyond identifying the warrant, its accompanying affidavit, the judge's signature to the warrant, and that officers executing the warrant relied upon the validity of the warrant when they executed it.

For at least the past twenty years, the law has not supported application of the exclusionary rule in the manner the defense now advocate. In a landmark decision, United States v. Leon, 468 U.S. 897 (1984), the Supreme Court created the "good faith" exception to the exclusionary rule. In short, the Supreme Court concluded that suppression of evidence obtained by execution of a lawfully obtained search warrant would not serve any useful purpose to deter police misconduct. Id. 918-19. Consequently, it is unnecessary for any reviewing court to revisit the probable cause determination made by another judge or magistrate once it is established that the officer executed the search warrant in a good faith reliance upon its validity. See e.g., United States v. Garey, 329 F.3d 573, 577 (7th Cir. 2003); United States v. Price, 265 F.3d 1097, 1102, (10th Cir. 2001).

It is a well grounded principle of law that even if the affidavit failed to establish probable cause, suppression of the evidence would not be an appropriate remedy if the officers conducting the search acted in "objectively reasonable reliance" on the warrants' validity. United States v. Leon, 468 U.S. 897, 922 (1984). Ordinarily, the existence of a warrant is sufficient to establish that the officers acted in good faith in conducting the search. Id. Suppression in such a case would be appropriate only if the defense were to demonstrate that the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923.[1]

Here, defense counsel allege the existence of certain technical deficiencies that they claim vitiate the existence of probable cause. Even assuming the existence of any one or even all of these

---

[1]The Supreme Court established three other grounds that would invalidate operation of the good faith exception to the exclusionary rule. The exception would not apply if the "magistrate abandoned his detached and neutral role" in assessing the affidavit or if the "officers were dishonest or reckless in preparing their affidavit," or if the warrant was so facially deficient (e.g., warrant fials to identify the premises to be searched) that a reasonable officer could not have believed that it was valid. United States v. Leon, 468 U.S. 897, 923 (1984). No defendant makes such allegations.

deficiencies (and to be clear, the Government does not so concede), the arguments still fall far short of meeting the very high threshold showing that the 78 page affidavit in support of the search warrant was "so lacking in indicia of probable cause" as to render official belief in the warrant unreasonable.

Franklin, Davis and Simmons complain that the probable cause in the search warrant was based on "stale" information, that is, criminal conduct that was too distant in time to generate a belief that the defendants now were engaged in the same criminal conduct. Franklin complains that the search warrant was "overly broad" and directed the seizure of items that were not contraband, evidence of a crime, or instrumentalities of a crime. Davis and Simmons also claim that the warrant failed to demonstrate a connection between street drug trafficking and contraband stored in their residence. None of these complaints however, even if they were legitimately supported by law or fact, render the affidavit so utterly lacking in indicia of probable cause as to render good faith reliance on the warrant as unreasonable.

The defense reliance upon another District Court Judge's decision in United States v Johnson, 332 F. Supp. 35 (D.D.C. 2004) is misplaced. In that decision, a District Court judge declined to apply the good faith exception to the exclusionary rule and suppressed handgun evidence obtained by a search warrant authorized by Chief Judge Rufus King of the Superior Court of the District of Columbia. The decision represents exactly the kind of scenario that the Supreme Court sought to avoid by creating the good faith exception to the exclusionary rule. In Johnson, the District Court merely substituted his own personal judgement that he would not have found probable cause to issue the warrant, for the judgement of a well respected and highly regarded jurist in the Superior Court who in fact, found probable cause. Such judicial nitpicking and "Monday morning quarter backing" does not serve any purpose in deterring police misconduct.

Moreover, and with all due respect to the disagreeing jurist, there is ample evidence in the opinion to recognize that the suppression issue in Johnson was just wrongly decided. The Leon decision eliminated suppression as a remedy, in those instances when police execute a lawful search warrant that violates no one's constitutional rights, but when a reviewing judge merely disagreed with another judge's earlier determination of probable cause. Hence, the Leon decision sets a very high threshold before the good faith exception will be rejected. The facts in the Johnson decision are light years short of attaining that threshold, as the defense then and are now required to show that the warrant affidavit was so deficient and so lacking in probable cause as to render official belief as entirely unreasonable. In the Johnson, decision the trial court suppressed the handgun merely because he thought that the affiant should have obtained and recited witness information about the defendant's residence. Instead, he disagreed with Chief Judge King who accepted a recitation of proof of residence derived from official Government records, including a pretrial services report prepared on the date of the defendant's last arrest and which recorded the defendant's assertion of his own residence. Such judicial nitpicking hardly rises to the threshold required by Leon, that is wholly lacking in indicia of probable cause. Instead, the Johnson opinion represents an example of one judge merely substituting his contrary opinion for another judge's earlier opinion finding that there was probable cause. The lesson in Leon was that the exclusionary rule was fashioned to deter police misconduct and not to reward criminals with windfall judicial decisions to exclude otherwise lawfully obtained evidence.

There are numerous cases in which reviewing appellate courts expressed concern about possible infirmities effecting probable cause articulated in affidavits, yet appropriately applied the Leon good faith exception to the exclusionary rule. United States v. Webb, 255 F.3d 890 (D.C. Cir.

8

2001)( an ongoing drug trafficking case, evaluating facts from which police could reasonably expect to find drugs and related accessories in a drug dealer's home).   See., e.g. United States v. Schulz, 14 F.3d 1093 (6th Cir. 1994) (while warrant for safe deposit box was based on a  "hunch," court could not conclude the warrant was "so lacking" in the indicia of probable cause as to render official belief in its existence entirely unreasonable); United States v. Nolan, 199 F. 3d 1180 (10th Cir. 1999) (while our sister circuits have held that in cases involving drug trafficking, observations of illegal activity outside can provide probable cause for search inside the home, court decided case relying on good faith exception to the exclusionary rule).

### A.( i).   The Warrant Was Not Deficient On Its Face

Ultimately a review of the entire affidavit will demonstrate that the facts were more than adequate to demonstrate probable cause.  Although the good faith exception to the exclusionary rule articulated in   United States v. Leon, 468 U.S. 897 (1984), makes it unnecessary for this court to resolve the various defense challenges to the probable cause articulated and already found in the search warrant affidavit, even if the court examined the merits of the various challenges, probable cause was demonstrated and the challenges are devoid of merit .

One such argument made by the defense is that the warrant was insufficient on its face. There simply are no facial deficiencies.  The 78 page affidavit in support of the search warrants did not include each and every fact known to the affiant concerning the investigation, but instead only set forth facts necessary to establish probable cause.  The affiant explained that FBI/MPD Safe Streets Task Force members began conducting an investigation into a narcotics trafficking conspiracy in November of 2002.  The local organization was largely directed by the primary supplier of PCP, John Franklin,  who in turn supplied some twenty other people with narcotics for

resale. The local organization was primarily involved in the distribution of narcotics in a discreet corner of the city, emanating from the intersection of 18th and M Streets., N.E. Months of surveillance, almost a year's worth of under cover buys and 60 days of wire tap interceptions on Franklin's cell phone  revealed the magnitude and extent of this ongoing and an entrenched operation.  The affidavit went on to explain:

"10. Based on the investigation in which your affiant has participated, it has been determined that the members of the conspiracy would and did play different roles in the conspiracy, perform certain different tasks and participate in the conduct of the organization through various criminal acts. The members made themselves and their services available at various times throughout the life of the conspiracy and participated in certain drug trafficking ventures as required to promote and protect the illegal drug distribution operation. The roles assumed by some members were interchangeable at various times throughout the conspiracy. Some of the roles assumed and carried out by the members included, among others, supplier of drugs, organizer, packager, holder, intermediary, helper, and street seller. It was further part of the conspiracy that, while PCP was the primary drug involved in the conspiracy, various members of the conspiracy made it known that customers could also purchase Ecstasy, and cocaine base, also known as crack cocaine. As part of the conspiracy, members of the conspiracy distributed such drugs to customers who requested them.

11.    The early stages of the investigation of FRANKLIN disclosed that WILLIAM D. ROBINSON is one of FRANKLIN's key associates who receives and distributes, at least, PCP and Ecstasy, at FRANKLIN's direction. The investigation revealed that persons associated with FRANKLIN and WILLIAM D. ROBINSON include, but are not limited to, MICHAEL ABNEY; JOSEPH L. BLACKSON, also known as "JOE BLACK"; KENNETH A. COLE, also known as "CRICKET"; ANTHONY R. DAVIS, also known as "FOOTBALL"; KENNETH DODD, also known as "K," and "K-DOG"; CEASAR HARRIS; JAMES D. HILL, also known as "FOXY"; JAMAL HINSON; SHAWN HINSON, also known as "JACK"; CANDICE HOWARD; ELIZABETH LEE;  JONTE D. ROBINSON, also known as "TAY"; LATISHA SINCLAIR also known as "TISH," RONNIE TUCKER, also known "TUCK," WILLIAM H. SIMMONS, also known as "MIKE"; EDWARD N. SPEARS, also known as "JUNIOR"; DWAINE WILLIAMS, also known as DWAYNE WILLIAMS and "SCOOTER"; TRUE NAME UNKNOWN, also known as "SHUG", "DONNELL MACK," and "HERMAN WALKER." FRANKLIN and WILLIAM D. ROBINSON are known to sell PCP in amounts ranging from a dipped cigarette (a single use quantity) to one ounce (28 grams) or above, and one Ecstasy pill to 100 Ecstasy pills per transaction. They may complete several such transactions daily. The people who buy  PCP and Ecstasy from FRANKLIN and WILLIAM D. ROBINSON  typically re-sell to individuals during day-to-day street sales of PCP and Ecstasy in the 18th Street and M Street area."

Affidavit, page 16-17. This extract of the search warrant affidavit demonstrates the kind of detail articulated and is very unlike the patently deficient search warrant affidavits that do not deserve protection of the <u>Leon</u>, good faith exception.

> When assessing probable cause for warrants,
> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

<u>Illinois v. Gates</u>, 462 U.S. 213, 238-39 (1983) (citing <u>Jones v. United States</u>, 362 U.S. 257, 271 (1960)).  The issuing court's determination of probable cause "should be paid great deference by reviewing courts." <u>Gates</u>, 462 U.S. at 236 (citation omitted).  Moreover, the reviewing court should recognize that affidavits for search warrants "must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." <u>United States v. Ventresca</u>, 380 U.S. 102, 108 (1965).  Applying these standards, it is clear that the information contained in the affidavit demonstrated there was sufficient evidence to demonstrate that above-named people were part of a long-term, ongoing conspiracy that had at its core, the distribution of narcotics.  This evidence was likewise sufficient to establish probable cause for all warrants in question. This issue of a facially deficient affidavit can be resolved merely by a review of the search warrant and affidavit and without a testimonial hearing.    This ground for suppression should be summarily denied.

## A. (ii).  The Search Warrant is Not Deficient Due to Staleness

All three defendants challenge the probable cause of the search warrant due to staleness. Each defendant asks the court to count the days between their individual last act of criminal conduct and the issuance of the warrant. For example, John Franklin, asks the court to calculate from his last sale to an undercover officer (October 28, 2003) to the issuance of the warrant – four and ½ months – and then find the evidence too stale to support probable cause. Anthony Davis asks the court to consider that the eight and ½ months that elapsed between his last sale to an undercover officer (June 24, 2003) and the issuance of the warrant rendered the evidence stale. Likewise, Simmons would argue the time between his April 10, 2003 sale to an undercover officer (at Franklin's behest) to the issuance of the warrant (eleven months) renders the information stale. The warrant states that these were not unrelated individual acts, but individual criminal acts representative of the drug dealing that was being conducted on a continual basis at 18th and M Streets, N.E. Nevertheless, the defense argument implies that there was a cessation of criminal activity for each defendant following the last reported undercover drug purchase. Such an inference is not justified by the facts recited in the affidavit, as the defendants were clearly involved in an ongoing criminal drug trafficking conspiracy.

As the case law makes clear, this court should not review the sufficiency of the affidavit, as the defense suggests, through a set of blinders focusing solely on each individual defendants' criminal conduct nor engage in the simplistic analysis that the defense suggests:

> But courts confronting suppression motions do not measure the timeliness of collected information mechanically, merely counting the numbers of days elapsed. Rather, a number of integers must be factored into the calculus – e.g., the nature of the information, the nature and characteristics of the supposed criminal activity, the nature and characteristics of the place to be searched, the nature of the items delineated in the warrant – and the likely endurance of the information must be gauged on that basis. The longer the expected duration of the criminal activity and the longer the expected life of the items attendant to it, the more likely that a datum from the seemingly distant past will be relevant to a current investigation.

United States v. Schaefer, 87 F 3d, 562, 568 ( 1st Cir. 1996) (citations omitted). In Schaefer, the court rejected a staleness challenge to an affidavit to search property for evidence of marijuana cultivation that was primarily based on information two to three years old, which the court found was supported by the slightest of recent corroboration only two months old. In upholding the search of this marijuana cultivation operation, the court emphasized that what was sought to be uncovered was "ongoing and entrenched activity." Id. Similarly, in our circuit, in United States v. Webb, 255 F 3d 890 (D.C. Cir. 2001) the court rejected a challenge to a "stale" affidavit, relying on Leon, and distinguished the 109 day delay between the last criminal activity and the issuance of the warrant from Schoeneman v. United States, 317 F.2d 173 (D.C. Cir. 1963) (107 days delay between spying classified documents in the defendant's home and the issuance of the warrant), because Webb's series of three undercover narcotics transactions revealed that he had been had supplier of narcotics for an extended period of time. "Courts have been considerably more lenient in assessing the currency of information supporting probable cause in the context of extended conspiracies than in the context of single-incident crimes." Id. at 905, citing, among other cases, Schaefer. Moreover, the court noted that "it would not have been unreasonable for an officer to conclude that a longtime drug dealer, whose most recent deal had occurred three months earlier, would still retain papers permitting him to get back in touch with his customers or – as turned out to be the case – his supplier." Id.

Similarly, in rejecting a staleness challenge to information five and ½ months old, another court in another circuit, United States v. Dozier, 844 F 2d. 701, 707 (9th Cir. 1988) found that "the mere lapse of substantial amounts of time is not controlling in a question of staleness." In Dozier, the court noted that marijuana cultivation was a long term crime and the fact that this was an ongoing

crime gave rise to the likelihood that the tools of the trade and documentary evidence would still be found months later.

Here, as in Schaefer, Webb and Dozier, the crime at question was not a single incident event but rather a broader, wider narcotics conspiracy consisting of an ongoing and entrenched criminal operation involving at least twenty people, as evidenced by their actions over the course of one year. Months of surveillance, undercover buys and wiretap interceptions documented the nature of the criminal operation, which involved the wholesale and retail distribution network of PCP and other narcotics involving many street level distributors at 18th and M streets, their suppliers and other people with supporting roles. The affidavit detailed over fifty undercover narcotics purchases conducted over a one year period and netting approximately 47 ounces of PCP, 316 grams of cocaine base, and 487 ecstasy pills at a total cost of over $40,000 to advanced Government funds. Eleven defendants, including Davis, Franklin and Simmons sold to undercover officers. Wiretap intercepts from Franklin's cell revealed conversations that showed a well orchestrated, business relationship involving conspiratorial activity, e.g., "our crew is proper," "are we in the water?" and the police grabbed "our people." The sampling of information in the affidavit demonstrates that this group of people was intricately intertwined with one another, dependent upon each other, and working in concert for the financial gain of the group. Accordingly, one cannot simply calculate the time that elapsed between Franklin's, Simmon's or Davis's last sale and the execution of the warrant but rather must consider the totality of the evidence against each and every defendant, as a group. Under this analysis, there was more than ample "fresh" probable cause to support this warrant and the defense have not demonstrated that staleness was an insurmountable obstacle to a probable cause finding.

Even had they demonstrated that staleness adversely effected probable cause, it was not so deficient as to render the entire warrant devoid of any indicia of probable cause.

### A. (iii).  <u>The Warrant Was Not Overly Broad</u>

In yet another effort to attack the probable cause determination, Franklin asserts the warrant was overly broad and that the search warrant gave police authority to seize items that should not have been seized.  A plain reading of the warrant demonstrates that the listed items to be seized had a reasonable nexus to drug trafficking: "Address and/or telephone books and papers reflecting names, address and/or phone numbers" could reveal names, addresses and telephone numbers of Franklin's suppliers or customers; "photographs, including photographs of co-conspirators, assets, weapons and/or controlled substances" could contain evidence of an individual's possession of contraband or reveal the identity of Franklin's co-conspirators; "indicia of travel, including but not limited to passports, visas, airline tickets, boarding passes, and airline receipts" could contain evidence showing that individuals traveled to places such as California, a known source for liquid PCP.  Moreover, even if the defense were able to make out a viable claim that the warrant was overly broad, the good faith analysis in <u>Leon</u> is still applicable, as allegations of over broadness do not render the entire search warrant as facially deficient or  without indicia of probable cause.

.       ### A.(iv).  <u>A Reasonable Basis Existed to Infer that Relevant Evidence Would Be Found in the Residence</u>

Finally, Davis and Simmons argue that, unlike the recitation of probable cause against Franklin, there was no information to support a likelihood that contraband or other evidence would be found in Davis' or Simmons'home in so far as neither  was seen engaging in criminal conduct in or from his house, but on the street nearby the  house. Davis contends that the affiants' recitation of

his training and experience with respect to his knowledge and belief that drug dealers keep contraband and related items in their residence is insufficient to establish the requisite nexus between the items sought and the location searched.

The authority in this Circuit is clearly to the contrary. The Court of Appeals for the District of Columbia Circuit has held that residential searches are permissible in the absence of evidence that the residence was used for illegal activity, as long there is a reasonable basis to conclude that relevant evidence will be found on the premises:

> ..observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer **from the nature of the illegal activity observed**, that relevant evidence will be found in the residence.

 United States v. Thomas. 989 F2d. 1252, 1255, (D.C. Cir. 1993) (emphasis added).

In Thomas, police officers acting on an informant's tip that the defendant was selling cocaine in a certain location, made two controlled purchases of cocaine from him in the same area. They later sought and obtained a search warrant for his residence, located miles away. The affidavit requested authority to search the defendant's residence for documents, books, ledgers and similar items as well as clothing the defendant wore during the controlled drugs buys. In support of the request, the affidavit cited the affiant's experience that drug dealers kept such items in their residences. Under those facts, the Court found that there was "substantial evidence" to support a finding of probable cause to issue the warrant. Id.[2] As in Webb, it was reasonable to conclude that a recent known drug

---

[2] The defense attempts to limit the import of Thomas by emphasizing that, in addition to everything else listed in the warrant, police sought and recovered the clothing worn during the transaction. Nothing in the decision hinged on the seeking of or the finding of the clothing, rather it was the *nature* of the illegal activity itself that could support an inference that contraband would

dealer, whose most recent deal occurred three months earlier, would have paperwork that would be indicative of the crime.

Moreover, many circuits, deciding this very issue, have ruled the same way. In United States v. Nolan, 199 F.3d 1180, 1183 (10th Cir. 1999), the court noted

> [A]t least three of our sister circuits have held in cases involving drug traffickers that "observations of illegal activity outside of the home can provide probable cause for the issuance of search warrant for a suspect's house, even in the absence of an allegation that any illegal activity occurred in the home itself." United States v. Thomas, 989 F.2d 1252, 1254 (D.C. Cir. 1993)(per curiam). Accord United States v. Williams, 974 F. 2d 480, 481-82 (4th Cir.)(per curiam) (upholding magistrate judge's determination of probable cause even though affidavit did not contain any facts indicating drug's were located at drug dealer's residence); United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1985) (despite affidavit's lack of direct evidence, probable cause existed to search defendant's residence based on reasonable inference that suspected drug dealer would keep incriminating evidence at his residence.)[3] Furthermore, at least four of our sister circuits expressly recognized at the time of the warrant in case that evidence of drug trafficking will likely be found where a drug dealer lives. E.g., United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993); United States v. Davidson, 936 F.2d 856, 860 (6th Cir. 1991); United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991).

Here, the affidavit made clear that Davis' home was within the targeted area of the investigation, 1825 M St., N.E. and that his two sales to undercover officers took place in the target area, the 1200 block of 18th St. N.E., and the 1200 block of 18th Place, N.E..[4] The affidavit explained that on those two occasions, when he sold to undercover officers, Davis worked hand-in-hand with

---

be found in the home. Finally, if counsel's argument that this was just about the clothing were correct, then presumably the opinion would have included a discussion about the warrant being overly broad.

[3] Footnote three in Nolan, id at 1183, explains that the First and Seventh Circuits have joined this group.

[4] Despite the fact that the affidavit does not spell out that all three locations are within two blocks, the court can take judicial notice of the fact that in this city, the numbers of the block of the lettered street (1800 block) correspond to numbered street that it intersects (18th St.).

John Franklin and Sean Hinson, two other people also identified as members of the conspiracy. The affidavit identified some twenty people involved in this conspiracy, each with a unique role to play. Information proffered demonstrated that all twenty were connected and worked together with the same objective in mind. Information was proffered to show that this conspiracy had been actively plying its trade for one full year, selling to undercover officers fifty times. Under these circumstances, it was certainly a reasonable inference, based on the nature of the conspiracy, to believe that relevant evidence would be found in Davis' residence.

With respect to Simmons, his residence is several doors down from the rendevous spot for Franklin and his supplier, Herbert Martin. Simmons was seen repeatedly with Franklin at that rendevous spot and served an undercover officer after she placed a phone call to Franklin and Franklin arrived in his vehicle, with the PCP and Simmons. His drug dealer and close relationship with Franklin would also give rise to an inference that he would have contraband or paperwork related to drug dealer in his home.

Accordingly, even if the court were to find some infirmity with the affidavit (stale probable cause, overly broad, etc.), the agents reasonably relied on a warrant that was *not* so lacking in the indicia of probable cause as to render official belief in its existence, entirely unreasonable. The defendants' motion to suppress evidence based upon challenges to the sufficiency of the warrant should be denied.

**B.**    **Agents Complied with "Knock and Announce"**

Franklin seeks suppression of evidence alleging non-compliance with the knock and announce provisions of 18 U.S.C. § 3109. The statute requires law enforcement officers, in ordinary circumstances, to knock and announce their presence and purpose before entering a premise that is

the subject of a search warrant. This issue can not be resolved without a testimonial hearing. The testimony will show that law enforcement complied with the provisions of the knock and announce statute. When executing a search warrant, law enforcement agents forcibly may enter the premises if, after giving notice of their authority and purpose, they are refused admittance. See 18 U.S.C. § 3109. See also United States v. Banks, 540 U.S. 31 ( 2003) ( the reasonable period of time that the police must wait is determined by the particular exigency of the case, here 15-20 seconds was reasonable even though the defendant would have necessarily required more time to travel from the bathroom to the door.) "'Refused admittance' is not restricted to an affirmative refusal, but encompasses circumstances that constitute constructive or reasonably inferred refusal." United States v. Bonner, 874 F.2d 822, 824 (D.C. Cir. 1989) (citation omitted). One need seek admittance only once in order to be refused so long as the announcement is "reasonably audible." United States v. Spriggs, 996 F.2d 320, 322 (D.C. Cir. 1993) (agents did not act unreasonably in entering apartment after knocking and announcing themselves only once in a manner "slightly above a normal tone of voice"). Moreover, when it is reasonable to assume that the occupants of the premises are awake and able to respond promptly, officers may conclude that they have been constructively refused admittance when the occupants fail to respond within fifteen seconds of their announcement. Spriggs, 966 F.2d at 323 (fifteen second delay reasonable when search occurred at 7:45 a.m. on a weekday); United States v. Davis, 617 F.2d 677, 695 (D.C. Cir. 1979), cert. denied, 445 U.S. 967 (1980) (fifteen to thirty second delay reasonable when search occurred around 2:00 a.m. and officers observed lights on in the premises).

In the present case, law enforcement officers executed the search warrant at approximately 6:02 am on March 16, 2004. The officers knocked on the door of the house in a loud and clear

manner, announcing their intent, purpose, and authority. After waiting a reasonable amount of time, when no response was received, the door was forced opened and entering officers found Franklin, his common-law wife and their children still upstairs on the second floor. Such actions were in compliance with the above-mentioned standard and provide no basis to suppress the evidence.

### C . The Items Seized Were Authorized Pursuant to the Search Warrant

Franklin raises yet another ground to suppress evidence recovered during the search warrant by claiming that law enforcement agents seized items that were outside the scope of the search warrant. Franklin recognizes the general rule, that if officers exceed the scope of a warrant, only improperly seized evidence will be suppressed and properly seized items remain admissible, but that if agents engaged in a "flagrant disregard for the limitations in a warrant," then complete suppression is mandated. United States v. Heldt, 668 F. 2d 1238 (D.C. Cir. 1981), *cert. denied*, 456 U.S. 926 (1982).

In an attempt to argue that there was a flagrant disregard for the warrant, Franklin points to eight items (out of 39) he asserts were seized without authorization (mail matter, fur coats, parking citation, newspaper article, identification cards, notebook and cameras.) Contrary to the assertions of Franklin, these items fit within the realm of evidence to be seized. The furs are "proceeds of narcotics violations," the parking citation demonstrates Franklin utilized the Ford truck (records relating to the transportation of controlled substances), and envelopes, letters, identification cards, etc. demonstrate occupation residency of the home where the weapons and other contraband were located. The cameras were seized because cooperators had advised the agents that at an 18th and M Street Crew social function, everyone was given  disposable cameras to take pictures of themselves and associates and it was believed co-conspirators would be identified from the pictures. The Washington

<u>Post,</u> Metro section contained an article about a local murder; this was seized because agents knew Franklin had shown a story about a murder in the Post to a cooperator and bragged that he was responsible. Even if this court were to find that something taken was not authorized, this hardly rises to the level of a "flagrant disregard" for the warrant mandating suppression of all items.

WHEREFORE, none of the arguments raised by the defense justify suppression of evidence obtained by execution of the search warrants and accordingly, the motions should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
Bar No. 451-058


By:     DARLENE M. SOLTYS
        Bar No. 431-036
        202-514-8147


        JOHN P. DOMINGUEZ
        Bar No. 959-809
        202-514-7060
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530


## Certificate of Service

I certify that on this _____ day of November, 2005, a copy of the foregoing motion was served on counsel for the defense: Elita Amato, Esq. (for John Franklin), James Lyons, Esq. (for Anthony Davis) and Eduardo Balarezo Esq. (for William Simmons) through the court's ECF filing system.


_____
Darlene M Soltys

21