UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Criminal No. 04-128 (RMC) |
| **v.** : | |
| : | |
| **JOHN FRANKLIN,** : | |
| **defendant.** : | |
| : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE IN SAFE DEPOSIT BOX**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Franklin's motion to suppress evidence seized from a safe deposit box pursuant to a seizure warrant[1] (Document 321). As grounds for this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a motions hearing.

**I. Facts**

On March 16, 2004, Magistrate Judge John M. Facciola approved a seizure warrant that authorized the seizure of the contents of a safe deposit box, #157, located at the Washington Telephone Federal Credit Union ("WTFCU") in Kensington, Md. in the names of John Franklin and his common-law wife, Elizabeth Lee.[2] The previous morning agents had searched John Franklin's residence at 1314 Belmont St., N.W. – pursuant to a search warrant issued by Magistrate Judge Facciola – and seized several bags of ecstasy containing 1000 pills, five fully loaded firearms

---

[1] We note that counsel inaccurately refers to the warrant as a search warrant, when in fact it was a seizure warrant, a distinction with an important difference.

[2] Attached to this opposition is an exhibit containing the search warrant, affidavit and return, bearing the caption, Mag. No. 04–189M-01(Cr).

including three assault rifles, one .45 caliber pistol and one shotgun and over $20,000 in cash. The affidavit in support of the seizure warrant for the entire contents of the safe deposit box detailed an ongoing investigation regarding the existence of a "crew" at 18th and M St., managed and run by John Franklin. The affidavit summarized the investigation to date to include undercover buys, intercepted wiretaps, the identity of other people involved and a synopsis of both the supply side participants and the lower, street level distributors of liquid PCP. The warrant also summarized Franklin's financial picture, including direct deposits of his legitimate income from July, 2000 to March 31, 2002, and the suspicious, large deposits, likely in cash, made after his source of legitimate income evaporated. Agents learned that 21 times, after his legitimate income ceased, Franklin had made forays to and from this particular safe deposit box.

On March 16, 2004, agents visited WTFCU in Kensington, Md and opened up the safe deposit box. Inside they found $35,000 in cash, one vacation resort catalogue and two pieces of paper with a phone number. All the contents were duly seized.

## II. Issues

Franklin makes the following challenges to the admission of evidence seized from the safe deposit box: 1. There was no nexus established between the safe deposit box and criminal activity; 2. Agents made a false statement in the affidavit suggesting that Franklin had no legitimate income on August 19, 2000, when he purchased a vehicle; and 3. The search warrant did not particularize the contents to be seized but rather provided that all of the contents of the box were to be seized.[3]

---

[3] Many other defendants have filed generic motions to adopt the various other motions, including suppression motions, filed by other co-defendants. Fourth Amendment challenges are necessarily personal, and we do not address the other motions which seek to adopt this suppression motion as no other defendant whose case is still pending, has standing to contest the seizure of this safe deposit box. United States v. Salvucci, 448 U.S. 83, 86-87 (1980); Rakas v. Illinois, 439 U.S.

### III. Argument

**A.     The Agents Executing the Warrants Relied on the Warrants in Good Faith**

Even if this court were to find some infirmity with the affidavit (i.e. that it failed to establish probable cause [4] or, as a seizure warrant, was overly broad), suppression of the evidence would not be an appropriate remedy because the officers conducting the search acted in "objectively reasonable reliance" on the warrants' validity. United States v. Leon, 468 U.S. 897, 922 (1984). Ordinarily, the existence of a warrant is sufficient to establish that the officers acted in good faith in conducting the search. Id. Suppression in such a case is appropriate only if "the magistrate abandoned his detached and neutral role" in assessing the affidavit or if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926. There is no indication that the information in the affidavit was false or made in reckless disregard for the truth; that the magistrate judges "wholly abandoned" their judicial role; or that the affidavit was so "lacking in indicia of probable cause" or so "facially deficient" that the executing officers could not reasonably rely on it. Leon, 468 U.S. at 923 (citations omitted).

---

128, 134 (1978).

[4] When assessing probable cause for warrants, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (citing Jones v. United States, 362 U.S. 257, 271 (1960)). The issuing court's determination of probable cause "should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (citation omitted).

Moreover, in <u>United States v. Schulz</u>, 14 F.3d 1093 (6th Cir. 1994), the principle case relied upon by the defense, the court found that while there was a lack of an evidentiary nexus between the contents of the safe deposit box and any criminal activity, it nonetheless upheld the search, finding that it could not say that the warrant was so lacking in the indicia of probable cause as to render official belief in its existence unreasonable.

   B.  **There existed a nexus between the items in the safe deposit box and Franklin's criminal activity**

  Franklin argues there was no information to support a likelihood that contraband or other evidence would be found in the safe deposit box as there was no indication that the credit union reported illegal activity related to the safe deposit box. Franklin relies on <u>Schultz</u> to contend that the affiants' recitation of her knowledge and belief that drug dealers often use safe deposit boxes to conceal assets to avoid detection is inadequate to support the nexus between criminal activity and the contents of the safe deposit box.

  Here, law enforcement had more than the "guess" that the officer in <u>Schultz</u> had. Here, agents already knew that Franklin had been without legitimate employment for the past two years, that $20,000 in cash had been found in his home the day before, that while supposedly unemployed, he had been making large deposits, purportedly of cash, into his bank account and that he had visited this safe deposit box 21 times in the past thirteen months, while supposedly unemployed. It is certainly true that no bank official had reported any suspected illegal activity with the safe deposit box. It is equally true that no law enforcement officer had followed him into the bank's vault to survey what Franklin placed into the box. Given the secure, private services attendant with having a safe deposit box, no one could have spied on him had they so desired. But the court cannot overlook the purpose of safe deposit boxes – it is to secure one's valuable items away from the

home, not to store things like dirty laundry. In this case, the agents had reasonable suspicion, which they did articulate, that they would find valuables inside the safe deposit box and that those valuables, who belonged to a man who had been unemployed for the past two years, would be proceeds of his drug trafficking activities.

Moreover, the authority in this Circuit is clearly contrary to the premise that absent some direct evidence, there is no nexus established linking the place to be searched with the criminal activity. The Court of Appeals for the District of Columbia Circuit has held, in the context of residential searches, that a search warrant is permissible in the absence of evidence that the residence was used for illegal activity, so long there is a reasonable basis to conclude that relevant evidence will be found on the premises:

> ..observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer **from the nature of the illegal activity observed**, that relevant evidence will be found in the residence.

United States v. Thomas. 989 F2d. 1252, 1255, (D.C. Cir. 1993) (emphasis added). Other circuits, deciding this very issue, have ruled the same way. In United States v. Nolan, 199 F.3d 1180, 1183 (10th Cir. 1999), the court noted

> [A]t least three of our sister circuits have held in cases involving drug traffickers that "observations of illegal activity outside of the home can provide probable cause for the issuance of search warrant for a suspect's house, even in the absence of an allegation that any illegal activity occurred in the home itself." United States v. Thomas, 989 F.2d 1252, 1254 (D.C. Cir. 1993)(*per curiam*). Accord United States v. Williams, 974 F. 2d 480, 481-82 (4th Cir.)(*per curiam*) (upholding magistrate judge's determination of probable cause even though affidavit did not contain any facts indicating drug's were located at drug dealer's residence); United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1985) (despite affidavit's lack of direct evidence, probable cause existed to search defendant's residence based on reasonable inference that suspected drug dealer would keep incriminating evidence at his

residence.)[5] Furthermore, at least four of our sister circuits expressly recognized at the time of the warrant in this case that evidence of drug trafficking will likely be found where a drug dealer lives. E.g., United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993); United States v. Davidson, 936 F.2d 856, 860 (6th Cir. 1991); United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991).

Accordingly, it was entirely reasonable, given the results of the search of the Belmont St. home the day before, coupled with the affiant's knowledge that drug dealers often secret proceeds of the crime in a safe deposit box to avoid seizure, to suspect that valuable items, constituting fruits of the crime, would be found inside the safe deposit box.

### C. Franklin is not entitled to a Franks hearing as there was no intentional false statement necessary to the finding of probable cause made in the affidavit

Franklin claims that a Franks violation[6] occurred because the affiant, despite having made reference to $59,681 of legitimate income from July 2000 to March 31, 2002 one paragraph earlier, wrote that "despite his lack of legitimate income, on August 19, 2000, Franklin purchased a 1997 Ford Expedition, for a total price of $19,953." No false statement has been made, and no hearing is required. It is clear that the affiant was talking about his lack of legitimate income prior to July 2000 and his unique ability – given his spotty income history – to somehow either buy out right or obtain financing for the vehicle after only having worked a single month. At best, defense counsel has pointed out poorly drafted language in the affidavit, but not intentional deceit. It would have been intentionally deceptive however, if the affiant had failed to mention that Franklin had legitimate income between July 2000 until March 31, 2002. The reference to the loan from the Washington Federal Telephone Credit Union indicates that Franklin did not have the legitimate financial means

---

[5] Footnote three in Nolan, id at 1183, explains that the First and Seventh Circuits have joined this group.

[6] Franks v. Delaware, 438 U.S. 154 (1977).

to continue the monthly payments of the approximately $17,000 loan after his legitimate income ceased in March, 2002. The impact and the intent of the affidavit is to note that Franklin did not even open the safe deposit box until February, 2003, a year after his legitimate source of income ceased, and that he made 21 trips to the box thereafter. The inference is that he was making cash withdrawals and deposits from the safe deposit box of illegal drug proceeds and did so to avoid a bank record paper trail of illegitimate income otherwise deposited to his checking account. The affiant is setting forth facts from which a reasonable person could conclude that deposits to Franklin's bank account and forays to his safe deposit box indicate financial transactions involving drug proceeds, not legitimately earned income. Moreover, the acquisition of the Ford truck in August, 2000 was not that critical a financial transaction, as it occurred during lawful employment. It suggests however, that he did not have an adequate credit history to have secured a $17,000 loan, but in reality, the critical facts are that he opened a safe deposit box a year after his employment ceased and made 21 forays into that box, all at a time when he supposedly he was not earning income. Had the paragraph about the acquisition of the Ford truck been excised, it would not have adversely effected a probable cause finding at all, and hence, the circumstances surrounding acquisition of the Ford truck were not material nor critical to the probable cause determination.

The defense have fallen far short of meeting the burden to demonstrate false or reckless disregard for the truth and therefore are not entitled even to a hearing. Before a defendant is entitled to a hearing, he must make a substantial showing that three facts are true: 1) that the affidavit contains a false statement; 2) that the absence of the false statement in the affidavit would negate probable cause; and 3) that the affiant made the false statement with the requisite scienter, that is, knowingly or with a reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154 (1977);

United States v. Richardson, 861 F. 2d 291, 293-294 (D.C. 1988) (citations omitted), cert. denied 489 U.S. 1058 (1989) (declining to decide whether an inaccuracy in a warrant's affidavit was material to probable cause in the absence of a contention that it was made intentionally or with reckless disregard for the truth).

While the precise question in Franks was whether the defendant was entitled to an evidentiary hearing on the issue of falsity, subsequent judicial decisions have applied the Franks test in ruling on the validity of the warrant even after the facts relating to the alleged falsity of the supporting affidavit have been determined. See Richardson, 861 F. 2d at 293 n. 2.

Importantly, there is a "presumption of validity" of such affidavits, and the rule announced in Franks with respect to entitlement to an evidentiary hearing "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." Franks, 438 U.S. at 167. In order to be entitled to an evidentiary hearing a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause" Id. at 155-156. See also Richardson, 861 F. 2d at 293.

In this case, the defense are not entitled to a hearing because 1) they have not established that the statement was false; 2) they have not shown that without the allegedly false statement there would be no probable cause to justify the seizure of the contents of the safe deposit box; or 3) they have not shown that the affiant made the alleged false statement with the requisite scienter, that is, knowingly or with a reckless disregard for the truth. When read in context and in its entirety, the affidavit demonstrates that Franklin had more money at his disposal than could be explained by his

legitimate income. The allegation that Franklin purchased a 1997 Ford Exhibition truck in August of 2000 "despite his lack of legitimate income," cannot reasonably be interpreted to mean that he did not have legitimate income in August, 2000, when the immediately preceding paragraph states clearly that he earned $59,000 of legitimate income from Lucent Technologies between July 2000 and March 2002. Had the affidavit concealed the information about his legitimate employment it might very well have rendered the affidavit susceptible to a <u>Franks</u> challenge. In context however, the language may have been poorly chosen, but not intentionally false.

### D. Failure to particularize the items to be seized is not fatal to the execution of the warrant

The magistrate judge granted the agents permission to seize the entire contents of the safe deposit box whatever they were. Nothing was left to their discretion and they followed the court's directive. An argument that somehow the agents should have particularized what they were looking for is illogical in this situation – the reason for having a safe deposit box in the first place is to store valuables. Drug dealers hide illegitimate, criminally derived proceeds, and other assets that are fruits of crime. Consequently, it was proper to seek a seizure warrant and to seize whatever was in the safe deposit box.

Accordingly, even if this court were to find some infirmity with the affidavit, as in <u>Schultz</u>, the agents reasonably relied on a warrant *not* so lacking in the indicia of probable cause as to render

official belief in its existence, entirely unreasonable. The defendant's motion to suppress evidence seized pursuant to the seizure warrant should be denied.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        United States Attorney
        Bar No. 451-058

By:   DARLENE M. SOLTYS
      Bar No. 431-036
      202-514-8147
      JOHN P. DOMINGUEZ
      Bar No. 959-809
      202-514-7060
      Assistant United States Attorneys
      555 4th Street, N.W.
      Washington, D.C. 20530
      **Counsel for United States**

## Certificate of Service

I certify that on this 21st day of November, 2005, a copy of the foregoing motion was served on counsel for the defense: Elita Amato, Esq. (for John Franklin) through the court's ECF filing system.

Darlene M Soltys and John P. Dominguez