**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:04-cr-00128 RMC |
| ) | |
| JONATHAN L. FRANKLIN, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT KEITH ODLE'S MOTION TO DISMISS
COUNTS ONE AND TWO OF THE SUPERSEDING INDICTMENT**

For the reasons set forth in his accompanying memorandum of law, Defendant Keith Odle moves to dismiss Counts One and Two of the Superseding Indictment against him.

                                    Respectfully submitted,

                                    KELLEY DRYE COLLIER SHANNON

By:             /s/            
      Barry J. Pollack
      Dawn E. Murphy-Johnson
      3050 K Street, N.W.
      Washington Harbour – Suite 400
      Washington, D.C. 20007
      Telephone: (202) 342-8472
      Facsimile: (202) 342-8451

Date: June 19, 2006                         *Counsel for Keith Odle*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 1:04-cr-00128 RMC |
| ) | |
| JONATHAN L. FRANKLIN, et al. ) | |
| ) | |
| Defendants.  ) | |
| _____) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT KEITH ODLE'S MOTION TO DISMISS**
**COUNTS ONE AND TWO OF THE SUPERSEDING INDICTMENT**

The Superseding Indictment ("Indictment") in this case names Defendant Keith Odle in four of its 159 counts. These counts purport to charge a narcotics conspiracy (Count One), a RICO conspiracy (Count Two), and single counts of possession with intent to distribute PCP (Count Four) and possession with intent to distribute ecstasy (Count Five).

The Indictment does not, however, adequately allege that Mr. Odle was a member of either the narcotics conspiracy or the RICO conspiracy. Counts One and Two, therefore, fail to charge an offense against Mr. Odle. Because these inadequacies violate Federal Rule of Criminal Procedure 7(c) and the Fifth and Sixth Amendments to the United States Constitution, both counts must be dismissed.

At best, Count One alleges multiple conspiracies — a narcotics conspiracy, a conspiracy to commit robbery and murder, and a conspiracy to commit murder — as well as separate substantive offenses of murder and assault. Accordingly, Mr. Odle moves in the alternative to dismiss Count One on the grounds that it alleges multiple offenses in a single count.

## BACKGROUND

Count One names all 19 defendants and purports to charge a single conspiracy to possess with the intent to distribute narcotics and to distribute narcotics. See Indictment at 3-7. According to the Indictment, the principle goal of the conspiracy, which lasted from sometime in 1997 until up to November 2004, see id. at 3, 31, was to distribute narcotics so that the defendants could "obtain as much money as possible." Id. at 4 ("Goals of the Conspiracy"). This alleged narcotics conspiracy was managed by John Franklin, who "regularly obtained large quantities of [PCP] from Herbert Eugene Martin" and others. See id. at 5 ("Ways, Manner, and Means to Accomplish the Conspiracy"). Franklin then allegedly supplied the PCP, as well as ecstasy, to other members of the conspiracy for redistribution by them. Id.

The Indictment further alleges that the defendants played different roles in the narcotics conspiracy, participating in certain drug trafficking ventures "as required to promote and protect the illegal drug distribution operation." Id. at 5-6. The defendants allegedly assumed various functions throughout the conspiracy, including "supplier of drugs, organizer, packager, deliverer, shipper, holder, intermediary, helper, and street seller." Id. at 6. The alleged co-conspirators used telephones to facilitate their narcotics operation, and they carried firearms to protect the operation "from theft, robbery, and competition from rival sellers." Id.

Count Two of the Indictment names all 19 defendants and purports to charge all of them with a RICO conspiracy. See Indictment at 30-33. This conspiracy also allegedly lasted from sometime in 1997 until up to November 2004. See id. at 31. The Indictment alleges that the defendants were members and associates of an "enterprise," whose goal was to "obtain money and other things of value." Id. Another alleged goal of the enterprise was to "traffic in controlled substances, including [PCP], cocaine base…and ecstasy, to commit acts of murder,

attempted murder, robbery, burglary, assaults with a dangerous weapon, assaults with intent to kill, and other acts of violence." Id.

As members and associates of the enterprise, the defendants allegedly conspired to "conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity…consisting of the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance…acts involving murder…and acts involving robbery." Id. at 32. Count Two incorporates by reference the "Ways, Manner, and Means" and the "Overt Acts" set forth in Count One. Count Two also alleges that the defendants conducted and participated in the affairs of the enterprise by "committ[ing], attempt[ing] and threaten[ing] to commit acts of violence, including murder and robbery, to protect and expand the enterprise's criminal operations," "promot[ing] a climate of fear through violence and threats of violence," and "us[ing] and threaten[ing] to use physical violence against various individuals." Id. at 33.

None of the 142 overt acts allege joint action between Mr. Odle and any other defendant. Likewise, none of the 157 substantive offenses name Mr. Odle together with any other defendant.

**ARGUMENT**

I.  **BECAUSE COUNTS ONE AND TWO FAIL TO ADEQUATELY ALLEGE THAT MR. ODLE WAS A MEMBER OF EITHER CONSPIRACY, THEY MUST BE DISMISSED AGAINST HIM**

The Fifth Amendment guarantees that prosecutions for serious crimes may be instituted only by indictment, United States v. Haldeman, 559 F.2d 31, 123 (D.C. Cir. 1976), and the Sixth Amendment requires that a criminal defendant be "informed of the nature and cause of the accusation" against him. U.S. CONST. AMEND. VI. These constitutional guarantees are reflected

3

in Federal Rule of Criminal Procedure 7(c), which provides that an indictment must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). While convictions are not reversed for minor and technical non-prejudicial indictment deficiencies, "the substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules." United States v. Russell, 369 U.S. 749, 762 (1962).

The Supreme Court has instructed that in order to satisfy the Constitution and Rule 7(c), an indictment must contain "the elements of the offense intended to be charged" and it must "sufficiently apprise[] the defendant of what he must be prepared to meet." Russell, 369 U.S. at 763. Even if an indictment follows the language of the statute in question, it must apprise the defendant with reasonable certainty of the nature of the accusation against him. Id. at 765. Thus, when the definition of an offense includes generic terms, the indictment must set forth the allegations with specificity — "it must descend to particulars." Id. The language of the statute may be used in the general description of the offense, "but it must be accompanied by such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Id. If the indictment does not contain every essential element of the offense, it is invalid; a bill of particulars cannot cure the defect. Id. at 769-70.

Here, Counts One and Two fail to provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged," as required by Rule 7(c)(1) of the Federal Rules of Criminal Procedure, in contravention of Mr. Odle's Fifth Amendment right to be tried only for offenses voted on by a grand jury and his Sixth Amendment right to be

4

informed of the nature of the charges against him. Thus, these counts cannot be cured by a bill of particulars and both must be dismissed.

### A. Because Count One Fails To Adequately Allege That Mr. Odle Was A Member Of The Narcotics Conspiracy, Count One Must Be Dismissed Against Him

Count One purports to charge Mr. Odle in a narcotics conspiracy that violates 21 U.S.C. § 846, and the object of which is a violation of 21 U.S.C. § 841(a)(1). See Indictment at 4, 29. The "gravamen" of such an alleged conspiracy is the agreement to obtain and distribute the narcotics in question. See United States v. Singleton, 177 F. Supp. 2d 12, 26 (D.D.C. 2001). Thus, to withstand scrutiny, an indictment purporting to charge a conspiracy under 21 U.S.C. § 846 must sufficiently allege an agreement to commit any of the offenses defined in 21 U.S.C. § 841(a)(1). See United States v. Baugham, --- F.3d ---, No. 03-3157, 2006 WL 1506859 at * 1 (D.C. Cir. June 2, 2006).

The Indictment in this case fails to sufficiently allege that Mr. Odle entered into an agreement to possess or distribute narcotics. In fact, the Indictment fails to connect him to any conspiracy at all. None of the Overt Acts tie him to any other defendant, and the conclusory statement in Count One that Franklin distributed drugs to "other members of the conspiracy" is not sufficient to do so. Without more, the Indictment merely alleges that Mr. Odle possessed PCP on one day in 2002 and a weapon one day several weeks later. None of the 142 overt acts allege joint action between Mr. Odle and any other defendant, and none of the 157 substantive offenses name Mr. Odle together with any other defendant.

The Indictment fails to meet the requirements of Russell: it clearly lacks a statement of the "facts and circumstances as will inform [Mr. Odle] of the specific offense, coming under the general description, with which he is charged." The Indictment fails to allege any agreement by Mr. Odle to obtain and distribute narcotics — it does not descend to particulars and it does not

5

sufficiently apprise Mr. Odle of what he must be prepared to meet. Thus, Count One must be dismissed.

### B. Because Count Two Fails To Adequately Allege That Mr. Odle Was A Member Of The RICO Conspiracy, Count Two Must Be Dismissed Against Him

Count Two purports to charge Mr. Odle with a RICO conspiracy that violates 18 U.S.C. § 1962(d), the object of which is to violate the substantive RICO statute, 18 U.S.C. § 1962(c) — "that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity." See Indictment at 32, 35. "Pattern of racketeering activity" is a defined term and requires at least two acts of "racketeering activity," which are "so-called predicate acts." United States v. Salinas, 522 U.S. 52, 62 (1997). "Racketeering activity," in turn, is defined to include

> any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year.

18 U.S.C. § 1961(1)(A).

The essential elements of a RICO conspiracy are that two or more people agreed to participate in a pattern of racketeering activity and that the defendant "knew of and agreed to the overall goal" of the racketeering activity. See United States v. Philip Morris USA, Inc., 327 F. Supp. 2d 13, 17 (D.D.C. 2004). Here, the Indictment fails to sufficiently allege that Mr. Odle knew of and agreed to any overall goal of any racketeering activity. As with Count One, the Indictment fails to connect Mr. Odle to any agreement whatsoever. Again, none of the Overt Acts connect him to any other defendant. Merely alleging that Mr. Odle possessed PCP and a weapon — on single days several weeks apart — does not sufficiently apprise Mr. Odle of what he must be prepared to meet under Count Two. Thus, Count Two must be dismissed.

II.  **BECAUSE COUNT ONE CHARGES MULTIPLE OFFENSES IN A SINGLE COUNT, IT MUST BE DISMISSED**

Rule 8(a) of the Federal Rules of Criminal Procedure permits the Government to join multiple offenses in the same indictment, "but requires that each be stated in a separate count." United States v. Stanley, 597 F.2d 866, 871 (4th Cir. 1979). Thus, an indictment cannot "join[] in a single count two or more distinct offenses." United States v. Sharpe, 913 F.3d 852, 865 (5th Cir. 1999); United States v. Cisnersos, 26 F. Supp. 2d 24, 51 (D.D.C. 1998). The Indictment here does not meet this standard.

The Court may review the Indictment to determine, pre-trial, whether the Indictment improperly joins separate offenses in a single count. See United States v. Levine, 546 F.2d 658, 664 (5th Cir. 1977). The question of whether "the *evidence* establishes a single or multiple conspiracies is a question of fact for the jury to decide." See, e.g., United States v. Ellender, 947 F.2d 748, 759 (5th Cir. 1991) (emphasis added). As Levine illustrates, however, the court can review the *indictment* to determine whether the allegations themselves, taken as a whole, fall within a legal theory that supports joinder. See also United States v. Nachamie, 101 F. Supp. 2d 134, 153-54 (S.D.N.Y. 2000) (finding that the court has the power to inquire into the Government's theory of joinder and can conclude, as a matter of law, that the allegations of a single conspiracy count improperly charge multiple conspiracies); see also United States v. Munoz-Franco, et al., 986 F. Supp. 70, 71 (D.P.R. 2001) (granting pre-trial motion to dismiss under Rule 8(a), concluding that allegations in conspiracy count of indictment set forth two separate conspiracies to defraud the same bank: "It is interesting to note that despite the government's representation that count 1 involves a single conspiracy, the description of the overt acts is neatly divided between two distinct sets of co-conspirators.").

In determining whether a count alleges a single conspiracy or multiple offenses, "the crucial indicator is the nature of the conspiratorial agreement itself." United States v. Hubbard, 474 F. Supp. 64, 71 (D.D.C. 1979). "It is settled that the agreement is the essence of the conspiracy; provided that there is only one agreement, the government may allege one conspiracy with multiple illegal objects." United States v. Kanchanalak, 37 F. Supp. 2d 1, 4 (D.D.C. 1999).

By its own terms, Count One of the Indictment clearly charges the defendants with a conspiracy related solely to the possession and distribution of narcotics: Martin supplied Franklin, who distributed to others; in turn, they acted as suppliers, shippers, and street sellers. And while the Indictment alleges that the defendants carried firearms to protect the narcotics operation, nowhere does the Indictment allege that violent acts such as murder and robbery were goals of the conspiracy, nor were such violent acts alleged to be ways, manners, or means to accomplish the conspiracy. Yet, the Indictment describes 11 such acts of violence in Count One's Overt Acts. See Indictment at 7-10, 12, 14 (Overt Acts 2, 3, 4, 5, 12, 13, 17, 35, 36, 50, 51).

By the Indictment's own terms, these 11 alleged acts — committed by only six of the defendants — are not encompassed by the alleged narcotics conspiracy. Instead, they constitute at least two additional conspiracies: one conspiracy between Messrs. Gooch, Dorsey, and Robinson to commit robbery and murder on August 1, 2000, see Indictment at 7-8 (Overt Acts 2, 3, 4, 5); and a separate conspiracy between Messrs. Franklin and Simmons to commit murder on March 28, 2003, see id. at 14 (Overt Act 50). The 11 overt acts also encompass four separate substantive offenses of murder: one by Mr. Bell on August 24, 2002, see id. at 9 (Overt Act 12); one by Mr. Gooch on September 13, 2002, see id. (Overt Act 13); and two others by Mr. Gooch

on February 21, 2003, see id. at 12 (Overt Acts 35, 36). They also charge one substantive count of assault by Mr. Gooch on November 8, 2002, see id. at 9-10 (Overt Act 17), and one shooting by Messrs. Franklin and Simmons on March 28, 2003, see id. at 14 (Overt Act 51). Because Count One actually charges multiple offenses in a single count, it must be dismissed.

This is not a situation in which the Indictment alleges a single agreement to commit multiple crimes; instead, it alleges multiple agreements and, thus, multiple conspiracies — as well as several separate non-conspiratorial offenses. Count One actually describes at least three separate conspiracies — one involving the possession and distribution of narcotics, and two others involving murder. These three conspiracies are not of the "same or similar character," nor are they "based on the same act or transaction" as the narcotics offenses. The Indictment also alleges four other substantive murders charges — none of which are "based on the same act or transaction" as the narcotics offenses.

Moreover, the Indictment does not set forth facts showing that these murders and conspiracies to commit murder were "connected with or constitute parts of a common scheme or plan," meaning the narcotics conspiracy. The allegations set forth in Count One were undertaken by distinct groups of defendants. The strongest link between the acts of violence and the narcotics conspiracy is that Mr. Gooch was allegedly involved in five murders as well as three (out of 136) drug-related transactions. See Indictment at 13, 14 (Overt Acts 45, 46, 49). Less compelling are the allegations that Mr. Dorsey, who was allegedly involved in the murders of Messrs. Lane and Cunningham, also allegedly possessed PCP on a single day in February 2003. See id. at 13 (Overt Act 39). These common reeds are far too thin to permit multiple offenses to be charged in single counts. Indeed, the Government has failed to allege any facts that might establish that the murders of Messrs. Cooper, Lane, Cunningham, Lurk, McCarson, and Miles

9

and Ms. Miller are part of the same "series of acts" as the multiple narcotics allegations set forth in Count One. Rather, the Indictment throws in these acts of violence, intending to create, out of whole cloth, an overarching conspiracy in a facially flawed effort to tie together unrelated acts.

This is in marked contrast to the RICO conspiracy charged in Count Two. Count Two specifically alleges that these acts of violence were goals of the RICO conspiracy. See Indictment at 31 ("A principle goal of the organization was to obtain money and other things of value. It was a further goal of the organization to traffic in controlled substances, including [PCP], cocaine base…and ecstasy, to commit acts of murder, attempted murder, robbery, burglary, assaults with a dangerous weapon, assaults with intent to kill, and other acts of violence"). Count Two also specifically alleges that these acts were manners and means of the alleged enterprise. See id. at 33 ("Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise were the following: a. Members of the enterprise and their associates committed, attempted and threatened to commit acts of violence, including murder and robbery, to protect and expand the enterprise's criminal operations. b. Members of the enterprise and their associates promoted a climate of fear through violence and threats of violence. c. Members of the enterprise and their associates used and threatened to use physical violence against various individuals.")

The Indictment alleges no relationship between Mr. Odle and the acts of violence. Moreover, no defendants other than Messrs. Gooch, Dorsey, Robinson, Franklin, Simmons, and Bell are alleged to have been involved in these violent acts. The Indictment itself does not tie these acts of violence to the Count One conspiracy, other than nominally categorizing them as "Overt Acts." Insofar as it joins three conspiracies and four other substantive offenses — seven

separate offenses in all — in a single count, the Indictment is duplicitous and Count One must be dismissed.

## CONCLUSION

For the reasons set forth herein, Defendant Keith Odle moves for dismissal of Counts One and Two of the Superseding Indictment.

Respectfully submitted,

KELLEY DRYE COLLIER SHANNON

By: /s/ Barry J. Pollack

Barry J. Pollack
Dawn E. Murphy-Johnson
Washington Harbour, Suite 400
3050 K Street, N.W.
Washington, DC 20007-5108
Telephone: (202) 342-8472
Facsimile: (202) 342-8451

Date: June 19, 2006

*Counsel for Keith Odle*