UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 04-128 (RMC) |
| v. | : | |
| | : | |
| JOHN FRANKLIN, et al. | : | |
| (KEITH ODLE, | : | |
| SHAWN HINSON) | : | |

## GOVERNMENT'S REPLY TO DEFENDANT HINSON AND ODLE'S OPPOSITION TO JOINDER AND OPPOSITION TO ODLE'S MOTION FOR SEVERANCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully replies to the various defense motions opposing joinder and seeking severance. Such motions were filed on behalf of defendant Shawn Hinson (Document 517), Keith Odle, (Document 516), and Keith Odle (Document 569). The motions may be resolved on the pleadings or after oral argument if the court so chooses, but no testimonial hearing is required. As grounds for this opposition, the United States relies on the following points and authorities and such other points and authorities in opposition.

At a status hearing on February 24, 2006, the Government orally moved to join Keith Odle[1]

---

[1] Keith Odle was a recent addition to the Government's case, having made his first appearance in the final, superceding indictment. At the time of his initial appearance in February, 24, 2006, it was not feasible to place him in Group 1 which would be starting trial the following week.

and Shawn Hinson[2] with the other four defendants remaining in Group 3 - Larry Gooch, Jonte Robinson, Tommie Dorsey and Kenneth Dodd. [3]

Defendant Odle then filed an opposition to the Government's oral motion for joinder (#516). Odle's complaint is that joinder is improper under Fed. Rule of Procedure 8(b). He claims that "nothing in the Indictment connect[s] Mr. Odle to the other defendants or to the conspiracies themselves, [thus] the two otherwise unrelated allegations against Mr. Odle are insufficient to connect him to either conspiracy." He further complains that joinder would violate his right to a fair trial in so far as there is a "gross" disparity between the nature of the non-violent substantive charges against him and the violent crime charges against Defendants Gooch, Dorsey and Robinson and a "significant" disparity between the scope and severity of the drug-related counts against Dodd, vis-a-vis Odle. Defendant Odle later filed a motion for severance (#569), reasserting that Fed. Rule of Procedure 8(b) precludes joinder because the indictment charges separate, distinct and unrelated offenses by different defendants and that disparity of the counts against him and the violent defendants as well as the disparity between the scope and severity of the drug-related charges against Dodd and against him will result in prejudicial spillover.

---

[2] Shawn Hinson had been placed into Group 1 at the status hearing on October 21, 2005, when the Court instructed the Government to name a sixth defendant for the March 6, 2006 trial after defense counsel for Dwaine Williams represented he had a conflict with the trial date. On December 16, 2005, in Document 448, the Court denied Hinson's earlier severance motion (document # 295) from his Group 1 defendants. However, in January, 2006, the Court granted Hinson's request to continue his trial date. As the Court is aware, by January, 2006, all defendants in Group 2 had completed a wired, group plea.

[3] Dodd is not charged with any acts of violence, while such charges are pending against the other three defendants, Gooch, Robinson and Dorsey.

Hinson asserts in his opposition (#517), that joinder under Rule 8(a) or (b) is improper in that he is not charged with any acts of violence and is only charged with one overt act in which he is linked to a co-conspirator (Anthony Davis) who is not in Group 3. He further argues that he will face "substantial prejudice" if forced to sit at the table with fellow co-conspirators charged with such "atrocities."

The Government submits that both Odle and Hinson should be tried with the remaining four defendants. None of the renewed motions raises any issues not previously addressed by the Government in its Supplemental Memorandum Demonstrating a Nexus of Murders to RICO Conspiracy (Document 417), a similar Supplement Memorandum to comply with the court's order of November 4, 2005 (Document 396), and its Opposition to Severance (Document 348). The Government relies on those previously filed oppositions and memoranda in opposition to these three renewed motions for severance.

Odle's opposition is based on the fallacy that because the Indictment seemingly fails to allege joint action between Odle and his co-conspirators in any of his substantive crimes or overt acts, that joinder is inappropriate. The evidence presented at his trial will connect Odle to both conspiracies (Narcotics and RICO), it will identify him as a member of the M St. crew, and it will demonstrate that his conduct was part of a common scheme or plan with that of other co-conspirators.

For instance, Odle is named in Overt Act # 20 with possession of an Intratec 9mm pistol loaded with 27 rounds of ammunition on December 16, 2002, at the intersection of the Suitland Parkway and Pennsylvania Ave., in Prince George's County, Md. The evidence at trial on this count will show the following: that evening, Odle, along with the following co-conspirators - Joe Blackson, Jamal Hinson, Kenneth Cole, Kran Bell and Anthony Davis all went together to the Classics

Nightclub located in Prince George's County. Keith Odle transported the weapon, which was owned by a fellow co-conspirator – weapons were commonly shared among the crew – to the nightclub that evening. The crew members left Classics in two cars traveling in tandem; Odle was driving his own car. Inside the car was the Intratec, one passenger, Kran Bell, and one crew photo taken at the nightclub depicting the above-noted crew members. A traffic stop by the United States Park Police resulted in Odle's apprehension, seizure of the weapon and the photograph and examination of the car. (Officers noted the existence of bullet holes of an undetermined age on the car; and inside the car, an expended cartridge case, a Halloween mask of the "Scream" and a bandana). It is factually true that no other defendant is named along with Odle for this Overt act. However, the testimony at trial will show that the crew members routinely went to night clubs together where they were recognized and introduced as the "M St. crew" and that they routinely carried weapons and engaged in shootouts with other rivals, all in an effort to further the goals of the enterprise.

      Keith Odle is also charged with the substantive counts 4 and 5 that charge possession with the intent to distribute PCP and ecstasy on November 8, 2002. The Court will recall the testimony at the Group 1 trial of MPD Officers Maslona and Hoffman who described a harrowing incident stemming from the arrest of Odle for these offenses. Odle had been selling narcotics on 18th Street that night and was chased by the police. After Odle ran into the restroom at the Eddie Leonard's Carry Out, and the drugs discovered in the trash can, he was arrested and was about to be taken to the awaiting transport vehicle. Meanwhile, fellow crew member Anthony Davis, who had escaped from the police, ran back to fellow co-conspirators and advised Larry Gooch that the police were about to arrest "his man." Gooch then walked over to the parking lot and armed with a Desert Eagle

.44 caliber handgun and opened fire at Officer Hoffman and her squad car. A bullet nearly struck her in the head. Again, it is factually true that no one else is charged with Odle's drug offense, however, the evidence that will be adduced at Odle's trial will connect that act to the conspiracies. Evidence will show that members of the crew acted in concert with one another by assisting each other from detection and apprehension by the police. Evidence will show that they routinely alerted one another to police presence, engaged in counter surveillance, engaged in actions to distract the police from their lawful duties and even fired weapons into the air and at the police all in an effort to prevent police disruption of the enterprise's drug trafficking activities.

Moreover, cooperating witnessed will identify Odle as a member of the M St crew. Crew photos will be offered into evidence that depict Keith Odle along with other members (including Larry Gooch, Jonte Robinson, Tommie Dorsey) wherein members flash the M St sign. Other anecdotal evidence will establish that Odle, because he was the only M St. crew member with a valid Maryland and could legally buy ammunition in Maryland license, was the principal supplier of ammunition for the crew.

Shawn Hinson is also linked conclusively to membership in the M St. crew and the Narcotics and RICO Conspiracies. He is depicted on pole camera evidence sitting in front of his mother's house at 1710 M St counting money. He is charged with three recorded drug purchases – Buy 59, 65 and 66 – involving Officer McClinton (who testified at the previous trial involving the Group 1 defendants) with selling 1 oz. and ½ oz. vials of PCP at the 18th and M St. neighborhood. He is charged with substantive counts and named in overt acts with two additional incidents of PCP distribution and possession with the intent to distribute involving other undercover officers for actions he engaged in at the 18th and M St. neighborhood. Hinson is also depicted in a crew photo,

himself flashing the M St. sign, along side Larry Gooch, Jonte Robinson and others in the crew. Cooperators will also identify Shawn Hinson as a member of the crew and someone who regularly sold PCP and other drugs on the strip at M St.

Finally, we note that the Court has previously considered and ruled on the same arguments presented here (Order filed 12/16/05 as Document #448). Previously, the Court ruled that joinder of the Group 1 defendants was proper as the "conspiracy charge links all offenses and defendants" and that the "majority of the charges against the defendants arise directly from their participation in the same drug distribution scheme." The Court further found that all of the crimes, including the violent ones, satisfied the "logical relationship" test and were properly joined under Rule 8(b). We think that logic applies with equal force here. The Court noted that the Government submitted that it could establish the existence of a RICO enterprise and show that each defendant participated in the same enterprise, even though levels or natures of their participation varied..[4]  The verdicts from the Group 1 trial show that the Government did deliver on our promise and vindicated the Court's order. [5]

---

[4]Evidence of the roles and existence of Hinson and Odle were presented at that trial, albeit only in passing.

[5] The Government submits that it will again present its evidence in an orderly fashion that makes it clear to the jury against which defendant the evidence is presented. This method will help avoid any "prejudicial spillover."

6

WHEREFORE, the defense motions for severance should be denied and Odle and Hinson should be placed for trial in Group 3.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        United States Attorney
        Bar No. 451-058


By:    DARLENE M. SOLTYS
        Bar No. 431-036
        202-514-8147



        JOHN P. DOMINGUEZ
        Bar No. 959-809
        202-514-7060
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530


**Certificate of Service**

I certify that on this 23 rd day of June, 2006, a copy of the foregoing opposition was served on counsel for the defense through the court's ECF filing system.

_____
John P. Dominguez and Darlene M Soltys