UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 1:04-cr-00128 RMC
)
JONATHAN L. FRANKLIN, et al. )
)
Defendants. )
)

**DEFENDANT KEITH ODLE'S REPLY TO
THE GOVERNMENT'S OPPOSITION TO
HIS MOTION FOR SEVERANCE**

Eighteen of the defendants in this case were charged in an indictment dated December 3, 2004. On August 31, 2005, the Government proposed three groupings of these defendants for the purposes of trial. See Government's Proposed Suggestion of Grouping (Docket No. 313, Aug. 31, 2005). Regarding the specific groups, the Court concluded that the Government's proposal "largely consolidate[d] those defendants charged with drug trafficking offenses, but no violent crimes, in Group Two, while placing those *charged with more serious offenses* in Groups One and Three." See Order on Motions to Sever Defendants and/or Counts at 2 (Docket No. 448, Dec. 16, 2005) ("Order on Motions to Sever") (emphasis added). The Court accepted the Government's proposal, except as to April Dodd. The Court severed Ms. Dodd from Group Three, based on the "grossly disparate nature of the charges against Ms. Dodd and the violent charges against Messrs. Gooch, Dorsey, and Robinson…and the likelihood of prejudice from a joint trial with principals who allegedly played much more substantial roles in the conspiracies over much longer periods." See Order on Motions to Sever at 3, 30-32.

On October 19, 2005 Mr. Odle was first charged in this case, through a superseding indictment ("Indictment"). It was not until February 24, 2006 that he had his initial appearance

in court. At that time, the Government orally proposed adding Mr. Odle to Group Three for the purposes of trial. Mr. Odle opposed the Government's motion on the matter, and has subsequently moved for severance under Federal Rules of Criminal Procedure 8 and 14.

On June 23, 2006, the Government filed its opposition to Mr. Odle's motion. The Government implicitly argues that because Mr. Odle could not have been joined with Group One,[1] and because Group Two pled out *en masse*, he should be tried with Group Three by default.[2]

In an effort to support this result, the Government proffers what it believes to be evidence that connects Mr. Odle with the M Street crew and the narcotics and RICO conspiracies charged in the Indictment. Based on this proffered evidence, the Government contends that Mr. Odle may properly be tried along with the Group Three defendants.

The Government's analysis simply ignores the very reason why Mr. Odle should not be tried with Group Three: like Ms. Dodd, he has not been charged with any of the "more serious offenses" charged against the other Group Three defendants. The Indictment charges Mr. Odle with only two substantive offenses, both of possession on a single day in November 2002 of street-level quantities of narcotics with intent to distribute. Because the defendants in Group Three are charged with multiple murders and other violent offenses, as well as two dozen drug-related counts and substantive weapons violations, it is all but inevitable that Mr. Odle's

---

[1] Mr. Odle made his initial appearance only a week before Group One's trial was scheduled to begin.

[2] In fact, the Government myopically argues only one principle upon which defendants should be joined or severed in this case, administrative convenience: "severance is inevitable merely because there [are] practical limitations on trial by jury as an adjudicative process and because there are physical limitations in the courtroom." Government's Opposition to Various Severance Motions at 5 (Docket No. 348, Sept. 21, 2005). Yet, even this principle, which, as discussed below, is only one of a number of factors the court must consider, does not militate in favor of joining Mr. Odle with Group Three. The evidence against the defendants currently assigned to Group Three is altogether unrelated to Mr. Odle's alleged offense conduct; at best, only modest efficiency is gained by trying Mr. Odle with those defendants. More significantly, doing so would be impermissibly prejudicial to Mr. Odle, as explained below.

2

constitutional right to a fair trial would be violated were he joined with Group Three — a fact that the Government fails to address in its opposition.

I. **The Government's Proffered Evidence Does Not Sufficiently Establish that Mr. Odle's Alleged Acts Were Part of a Common Scheme or Plan Under Rule 8(b)**

As set forth in the memorandum of law in support of Mr. Odle's severance motion, the joinder of defendants "requires a balancing of the right of an accused to a fair trial and the public's interest in the efficacious administration of justice." United States v. Levine, 546 F.2d 658, 661 (5th Cir. 1977). Rule 8(b) is meant to "put some reasonable limitation on the conduct of mass trials." United States v. Perry, 731 F.2d 985, 989 (D.C. Cir. 1984); see Order on Motions to Sever at 3-4 (recognizing that "there are definite limits to what the government can put together in a single indictment") (quoting United States v. Nicely, 922 F.2d 850, 853 (D.C. Cir. 1991)). Thus, seemingly unrelated "acts or transactions" can qualify as a "series" for the purposes of Rule 8 only "if they constitut[e] parts of a common scheme or plan." Perry, 731 F.2d at 990.

In its opposition, the Government claims that it has proffered evidence that sufficiently establishes that Mr. Odle's acts were part of a common scheme or plan with the Group Three defendants for the purposes of Rule 8(b). The evidence proffered concerns the only two incidences for which Mr. Odle is mentioned in the Indictment: possession of small street-level quantities of PCP and ecstasy on November 8, 2002 (Counts 4 and 5), and possession of a gun on December 16, 2002 (Overt Act 20). In fact, even considering this proffered evidence, to which the Government concedes the Indictment makes no reference, the Government has failed to demonstrate that Mr. Odle's alleged acts were part of a common scheme or plan with the Group Three defendants. Thus, joining Mr. Odle with Group Three would be prejudicial *per se* and a grant of severance is, therefore, mandatory under Rule 8(b). See Levine, 546 F.2d at 661

3

("misjoinder under the rule is prejudicial *per se*; if the limits of the rule are exceeded, a grant of severance is mandatory").

**A. Overt Act 20**

The Government claims that its proffer of the facts surrounding Overt Act 20 support joining Mr. Odle with the Group Three defendants, each of whom is charged with substantially more serious offenses than is Mr. Odle. See Government's Reply to Defendant Hinson and Odle's Opposition to Joinder and Opposition to Odle's Motion for Severance at 3 (Docket No. 574, June 23, 2006) ("Gov't Opp."). Yet, the proffered facts, which the Government concedes appear nowhere in the Indictment, are merely that: (1) on December 16, 2002, Mr. Odle went to a nightclub with five other alleged co-conspirators, none of whom are defendants assigned to Group Three; (2) Mr. Odle "transported a weapon," which was owned by another unidentified alleged co-conspirator, to the nightclub;[3] (3) Mr. Odle and Kran Bell — a non-defendant — left the nightclub in Mr. Odle's car and the other alleged non-Group Three co-conspirators were in another car; and (4) after a traffic stop, the police seized the weapon and a photograph taken at the nightclub, which depicts Mr. Odle with the non-Group Three alleged co-conspirators. Id. at 3-4.[4]

The Government also claims that "the crew members *routinely* went to night clubs together where they were recognized and introduced as the 'M St. crew' and that they *routinely*

---

[3] The Government does not contend that the weapon was owned by a defendant in Group Three.

[4] Separately, the Government proffers that it possesses photographs that "depict Keith Odle along with other members (including Larry Gooch, Jonte Robinson, Tommie Dorsey) wherein members flash the M St sign." Gov't Opp. at 5. The Government does not state when or where these photographs were allegedly taken or how they might relate to any of the acts alleged in the Indictment involving Mr. Odle. Further, the Government notably does not allege that *Mr. Odle* was flashing the M Street sign in the photographs — just that "members" were. This is in marked contrast to the Government's allegations regarding Shawn Hinson. The Government specifically claims that Mr. Hinson is depicted in group photographs, "himself flashing the M St. sign, along side Larry Gooch, Jonte Robinson and others in the crew." Id. at 5-6. What the Government proffers with respect to Mr. Odle is nothing more than association. That Mr. Odle appears in an undated photograph with other Group Three defendants, standing alone, hardly supports joining Mr. Odle with Group Three for trial.

4

carried weapons and engaged in shootouts with other rivals, all in an effort to further the goals of the enterprise." Id. at 4 (emphasis added). Yet, quite noticeably, the Government does not allege that Mr. Odle was recognized at any nightclub as a member of the M Street crew, that he carried a weapon into any nightclub or that he was at a nightclub with people who are members of the crew other than on the single occasion. More significantly, the Government does not allege that Mr. Odle was involved in any shootout or any other violence on the single occasion on which the Government places him in a nightclub with alleged (non-Group Three) crew members, or that any violence was contemplated or reasonably foreseeable from Mr. Odle's alleged actions.

At the very most, the proffered facts suggest that Mr. Odle went to a nightclub on one occasion with a group of men who are alleged non-Group Three co-conspirators, and that during a traffic stop later that night, the police seized a gun from Mr. Odle's car and a photograph that Mr. Odle and the other non-Group Three individuals had taken that evening at the nightclub. None of these proffered facts presents a basis for concluding that Mr. Odle was engaged in a common scheme or plan with Group Three defendants.

The Government has alleged that the alleged co-conspirators wanted to obtain as much money and other things of value as possible. See Indictment at 4 ("Goals of the Conspiracy"). Merely going to a nightclub does not constitute an act that is part of a common scheme or plan to obtain as much money as possible. Likewise, possession of a gun in one's car does not constitute an act that is part of a common scheme or plan between Mr. Odle and Group Three co-defendants to obtain as much money as possible.

Even if the Government could make out an attenuated argument that Mr. Odle, through his alleged actions, was himself seeking to obtain money or other things of value, this would not

5

establish a common scheme or plan with the Group Three defendants. Taken to "an extreme generalization, of course, anyone participating in any way in an illegal activity to obtain money could be said to be part of one conspiracy." United States v. Castro, 829 F.2d 1038, 1045 n.20 (11th Cir. 1987); see United States v. Nicely, 922 F.2d 850, 854 (D.C. Cir. 1991) (noting that the "common use of falsehoods to make money....cannot be the hook for joining otherwise unrelated conspiracies"). Here, the Government's allegations concerning Overt Act 20 fail to provide the necessary connection between Mr. Odle and the other Group Three defendants for the purposes of joinder under Rule 8(b).

**B. Counts 4 and 5**

Likewise, the Government claims that its proffered facts surrounding Counts 4 and 5 — facts that, again, appear nowhere in the Indictment — establish that Mr. Odle's acts were part of a common scheme or plan with the Group Three defendants "to obtain as much money as possible." Again, the Government's attempt falls flat. The Government proffers that: (1) on November 8, 2002, Mr. Odle "had been selling narcotics on 18th Street...and was chased by the police"; (2) he ran into the bathroom at a carryout restaurant; (3) drugs were found in the bathroom's trash can; (4) Mr. Odle was arrested; (5) Anthony Davis told Larry Gooch that "his man" was about to be arrested; and (6) Gooch opened fire on a police officer in her parked squad car. Gov't Opp. at 4-5.[5]

*Mr. Odle* is not alleged to have alerted anyone to the presence of the police, engaged in counter surveillance or actions to distract the police. *Mr. Odle* is not alleged to have fired

---

[5] The Government also claims that other proffered facts will connect Mr. Odle's alleged drug offense to the conspiracies charged in this case. Id. at 5. The Government asserts that members of the M Street crew "routinely alerted one another to police presence, engaged in counter surveillance, engaged in actions to distract the police from their lawful duties and even fired weapons into the air and at police all in an effort to prevent police disruption of the enterprise's drug trafficking activities." Id. Notably, the Government cites not a single example of this alleged routine pattern of behavior and therefore fails to relate this conclusory allegation to Mr. Odle at all.

weapons at anyone at all, much less at the police. Nor does the Government allege that Mr. Odle was aware of these events, or that it was reasonably foreseeable to Mr. Odle that by allegedly selling a small street-level amount of drugs, his actions would cause someone to shoot at a police officer.

At most, the Government has alleged that on a single day in November 2002, Mr. Odle was engaging in a street-level sale of drugs; that he ran from the police; and that he was later arrested. This does not constitute an act that is part of a common scheme or plan sufficient to try Mr. Odle with Group Three. There is no allegation that he was dealing drugs with any of the other alleged co-conspirators, or that these sales were made under the auspices of the "enterprise." More significantly, these proffered facts do not connect Mr. Odle, other than temporally, to any of the acts of violence alleged against the Group Three defendants. The mere fact that Mr. Odle's alleged acts were proximate or even simultaneous with acts of his co-defendants is not enough to establish the existence of an overarching conspiracy. See Levine, 546 F.2d at 665.[6]

That another alleged co-conspirator — without Mr. Odle's knowledge or agreement and in a manner not alleged to have been reasonably foreseeable to Mr. Odle — supposedly shot at the police is not an act that can properly establish a common scheme or plan between Mr. Odle and the Group Three defendants. The Government has not alleged that Mr. Odle had any communication with Davis (who, regardless, is not in Group Three), that Mr. Odle asked Davis to alert Gooch of his impending arrest, that Mr. Odle agreed to have Gooch to shoot at the police officer, or that Mr. Odle could reasonably foresee Gooch shooting at the officer. All that the

---

[6] While the temporal connection between the alleged acts of Mr. Odle and those of Messrs. Davis and Gooch do not establish the existence of a common scheme or plan sufficient to permit joinder under Rule 8(b), it greatly enhances the likelihood that Mr. Odle would suffer undue prejudice if tried with Mr. Gooch in Group Three, because evidence against Mr. Gooch would spill over to Mr. Odle. As set forth below, even if joinder were permissible under Rule 8(b), the Court should grant Mr. Odle a severance under Rule 14 to ensure that Mr. Odle receives a fair trial.

7

Government has alleged is that while Mr. Odle was being arrested, Messrs. Davis and Gooch acted independently and without Mr. Odle's consent or knowledge — the very opposite of concerted action with Mr. Odle. As with the Government's allegations concerning Overt Act 20, its allegations regarding Counts 4 and 5 fail to allege that Mr. Odle's actions were part of a common scheme or plan with Group Three defendants for the purposes of joinder under Rule 8(b).

II.     **The Government Ignores the Court's Discretionary Authority under Rule 14 to Sever Mr. Odle from Group Three to Ensure that Mr. Odle's Constitutional Right to a Fair Trial Is Not Violated**

Even if the proffered facts surrounding Overt Act 20 and Counts 4 and 5 made joinder permissible under Rule 8, the Court should exercise its broad discretion and grant Mr. Odle's motion for severance because his right to a fair trial would otherwise be violated. See Nicely, 922 F.2d 850, 855 (D.C. Cir. 1991) (finding that the judiciary's preference for joint trials where conspiracy is alleged cannot "trample a defendant's right to a fair trial."). Because there are "clear disparities between the weight, quantity, or type of the evidence against [Mr. Odle] and against the other defendants," a "spillover" effect could jeopardize the lesser-implicated defendant's [Mr. Odle's] right to a fair trial. See United States v. Halliman, 923 F.2d 873, 884 (D.C. Cir. 1991); United States v. Long, 905 F.2d 1572, 1581 (D.C. Cir. 1990). By not addressing this argument in its opposition, the Government seems to have implicitly conceded this point.

In light of the D.C. Circuit's decision in United States v. Mardian, it is clear that Mr. Odle should not be joined with Group Three for trial. Under Mardian, if the Court determines that there is a "'danger[] of transference of guilt,'" it should sever Mr. Odle's trial from that of the other defendants. See Mardian, 546 F.2d 973, 977 (D.C. Cir. 1976) (quoting Kotteakos v.

United States, 328 U.S. 750, 774, 773 (1946)). This inquiry involves looking at the roles each defendant allegedly played in the conspiracy, and the length of time that each was allegedly involved in the conspiracy. Id. at 977-81.

First, all of the defendants currently assigned to Group Three played overwhelmingly more substantial roles in the alleged conspiracies. Mr. Odle is named in 3 of 142 overt acts. In contrast, the defendants currently assigned to Group Three are named in 35 overt acts. Moreover, Mr. Odle is charged in only 4 counts of the Indictment — the two conspiracy counts and Counts 4 and 5 (both of which relate to the alleged November 8, 2002 possession with the intent to distribute). The defendants currently assigned to Group Three are charged in both conspiracy counts, as well as in 59 other counts.

Second, the defendants currently assigned to Group Three were involved in the alleged conspiracies over considerably longer periods of time. Mr. Odle is alleged to have participated in the conspiracies on two distinct dates separated by a few weeks: November 18, 2002 and December 16, 2002. In contrast, the other defendants assigned to Group Three are alleged to have participated in the conspiracies as early as January 21, 2000 and as late as November 8, 2004.

Moreover, the charges against Mr. Odle differ dramatically from the charges against Messrs. Gooch, Dorsey, J. Robinson and Dodd. See Long, 905 F.2d at 1581; United States v. Sampol, 636 F.2d 621, 646 (D.C. Cir. 1980). Mr. Odle is alleged to have possessed a gun on one occasion, and a small street-level amount of drugs on one other occasion. Messrs. Gooch, Dorsey, and J. Robinson are charged with violent substantive offenses including first-degree murder, burglary, and armed robbery. Mr. Gooch is charged with three additional first-degree murders. Mr. Dodd faces more than a dozen counts of narcotics possession and distribution

during and throughout 2003 and multiple charges of possession of firearms, guns, ammunition, and drug paraphernalia.[7]

The most recent trial in this case lasted more than two-and-a-half months. With the serious charges of violent crimes against Messrs. Gooch, Dorsey and J. Robinson, it seems likely that Group Three's trial will take at least that long, if not longer. For Mr. Odle to sit through a trial of that length, for his name to be mentioned only in passing, could not possibly result in anything other than the jury concluding that Mr. Odle is guilty by association. See United States v. Kelly, 349 F.2d 720, 756 (2d Cir. 1965) (finding that because the defendant spent three months at trial before his name was even mentioned, the weight of the evidence against his codefendants "must have stamped them in the eyes of the jurors as unscrupulous swindlers of the first rank," and that there was no doubt that "some of this rubbed off" on the defendant).[8] Under these circumstances, there is an overwhelming risk of undue prejudice to Mr. Odle, who is charged with substantially less serious substantive offenses than the defendants assigned to Group Three. That the Government is seeking the death penalty against Mr. Gooch only heightens this risk, and no jury instruction could be expected to ameliorate the resulting prejudice.

Not only is there a grave disparity in the seriousness of the charges, but there is also a significant difference in the quality of the evidence against Mr. Odle. Accordingly, there is no safeguard in place to minimize the risk that Mr. Odle will suffer undue prejudice from the spillover of evidence against other defendants. Unlike other defendants, the Government has no

---

[7] As noted above, the allegation that Mr. Gooch (unbeknownst to Mr. Odle) shot at a police officer while Mr. Odle was being arrested, presents a unique and dangerous potential for evidence against Mr. Gooch to spill over to Mr. Odle, resulting in undue prejudice to him.

[8] The danger of guilt by association is manifest in this case, where the Government has proffered that its "evidence" that Mr. Odle is connected to Mr. Gooch and other Group Three defendants consists primarily, if not solely, of photographs of Mr. Odle associating with these individuals.

wiretap recordings of Mr. Odle. The Court must consider this substantial difference in the quality of the evidence, along with the disparity in the seriousness of the offenses alleged, in assessing whether to grant severance under Rule 14. Cf. United States v. Spriggs, 102 F.3d 1245, 1257 (D.C. Cir. 1996) (in assessing prejudice from joinder, court noted that risk of undue prejudice was small, since evidence of defendant's role "consist[ed] largely of tape recordings of [his] own words"); see Order on Motions to Sever at 27 (denying motions to sever by Group One defendants against whom the Government would be introducing extensive wiretap recordings).

According to the Government's own allegations, Mr. Odle plainly played a markedly different role in the alleged conspiracy and over a significantly shorter length of time than the other defendants in Group Three. In addition, there is clearly a disparity in the weight, quantity and type of evidence against Mr. Odle than that against the defendants currently assigned to Group Three. Because of the grossly disparate nature of the non-violent substantive charges against Mr. Odle and the numerous violent charges against Messrs. Gooch, Dorsey, and Robinson, and the likelihood of prejudice from a joint trial with principals who allegedly played much more substantial roles in the conspiracies over much longer periods, Mr. Odle should be severed from the defendants currently assigned to Group Three. The disparity in the nature of charges and the kinds of evidence to be introduced against Messr. Gooch, Dorsey, Robinson and Dodd are such that they pose a "serious risk that a joint trial would...prevent the jury from making a reliable judgment about his guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

As more fully discussed in Mr. Odle's motion for severance, see Docket No. 569, Mr. Odle's situation is substantially similar to that of April Dodd, whose trial the Court has previously severed from Group Three. See Order on Motions to Sever at 32. Because of the

disparate nature of the charges and the kinds of evidence to be introduced against Messrs. Gooch, Dorsey, J. Robinson, and Dodd, the Court severed Ms. Dodd from Group Three. <u>Id</u>. Given the similarity of their circumstances, Mr. Odle seeks the same relief.

Granting such relief not only ensures that Mr. Odle will receive a fair trial, but it also would not substantially interfere with the efficient administration of justice. Ms. Dodd must be tried separately from Group Three based on the Court's prior ruling. Shawn Hinson, who like Ms. Dodd, is not charged with violent offenses, is not presently assigned to a trial group. Accordingly, the Court will necessarily need to hold an additional trial following the trial of the Group Three defendants. Little, if any, efficiency is lost by assigning Mr. Odle to that trial group rather than Group Three. Conversely, the overwhelming risk of undue prejudice to Mr. Odle from joining him to Group Three would be avoided by assigning him instead to a trial group consisting of other defendants whom, like himself, have been charged with non-violent offenses.

## CONCLUSION

For the reasons set forth in Mr. Odle's opposition to the Government's oral motion to assign him to Group Three, Mr. Odle's memorandum of law in support of his motion to sever, and as set forth above, Mr. Odle cannot properly be joined with Group Three and must be severed under Rule 8(b). Alternatively, even if such joinder were permissible, the Court should sever Mr. Odle from Group Three pursuant to Rule 14.

Respectfully submitted,

KELLEY DRYE COLLIER SHANNON

By: _____/s/_____
Barry J. Pollack
Dawn E. Murphy-Johnson
3050 K Street, N.W.
Washington Harbour – Suite 400
Washington, D.C. 20007
Telephone: (202) 342-8472
Facsimile: (202) 342-8451

Date: July 10, 2006

*Counsel for Keith Odle*